[No. S010655. Dec. 10, 1990.]

ROBERT ZANE CURL, Petitioner, v.
THE SUPERIOR COURT OF FRESNO COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

1295

**COUNSEL**

Smurr & Henry, Smurr, Henry & Gelegan, John B. Smurr, Charles F. Magill and Len W. Holt for Petitioner.

Fern M. Laetham, State Public Defender, Michael Pescetta and Sarah Plotkin, Deputy State Public Defenders, as Amici Curiae on behalf of Petitioner.

No appearance for Respondent.

Kent S. Scheidegger as Amicus Curiae on behalf of Respondent.

John K. Van de Kamp, Attorney General, Steve White and Richard B. Iglehart, Chief Assistant Attorneys General, Arnold O. Overoye, Assistant Attorney General, Joel Carey, Shirley A. Nelson, Derald E. Granberg and Harry Joseph Colombo, Deputy Attorneys General, for Real Party in Interest.

**OPINION**

**EAGLESON J.**—We granted review in this case to settle the question of whether the *constitutional validity* of a prior murder conviction underlying a

prior-murder special circumstance may be collaterally attacked via a pretrial motion to strike the special circumstance, and to further determine the applicable standard of proof by which the invalidity of the prior conviction must be established in order to support the striking of the special circumstance.

We hold that in a capital prosecution, the defendant may challenge the constitutional validity of a prior murder conviction alleged as a prior-murder special circumstance by a pretrial motion to strike the special circumstance allegation, and that the defendant is entitled to an evidentiary hearing on such a motion, conducted pursuant to the procedures set forth in *People v. Coffey* (1967) 67 Cal.2d 204 [60 Cal.Rptr. 457, 430 P.2d 15], and *People v. Sumstine* (1984) 36 Cal.3d 909 [206 Cal.Rptr. 707, 687 P.2d 904]. As we shall further explain, in such a proceeding the defendant seeking to collaterally attack the validity of his prior murder conviction has the burden of proving its constitutional invalidity by a preponderance of the evidence. (Evid. Code, § 115.) As defendant's motion to strike the prior-murder special circumstance was properly denied, we affirm the Court of Appeal's denial of his petition for a writ of mandate.

## I

Defendant Robert Zane Curl is charged in the Fresno County Superior Court with first degree murder. A prior-murder special circumstance is alleged. (Pen. Code, § 190.2, subd. (a)(2)—all further statutory references are to the Penal Code unless otherwise indicated.) By pretrial motion defendant sought to strike the prior-murder special-circumstance allegation on grounds that he was under the influence of drugs at the time he pled guilty to the 1977 murder of an inmate at the California Medical Facility in Vacaville, and that he was not properly advised of his *Boykin-Tahl* rights (*Boykin v. Alabama* (1969) 395 U.S. 238 [23 L.Ed.2d 274, 89 S.Ct. 1709]; *In re Tahl* (1969) 1 Cal.3d 122 [81 Cal.Rptr. 577, 460 P.2d 449]) at the time he entered his guilty plea.

The trial court held an evidentiary hearing on the motion. No transcript of the 1977 change-of-plea proceedings was available, but the minute order for those proceedings reflects that counsel reached a stipulated plea of second degree murder. It further states: "Counsel and Court now voir dire defendant as to the charge, whereupon the change of plea is granted. Having considered the transcript of proceedings had in the lower court, the Court finds the pleas to be free and voluntary, predicated on a factual basis, with an intelligent waiver of rights and with understanding of the nature of the charges and possible consequences and the plea is accepted."

The trial judge who presided over the change-of-plea proceedings on July 1, 1977, the prosecutor, and counsel who represented defendant in those proceedings, each testified at the evidentiary hearing.

The trial judge, now retired, had no specific recollection of the proceedings at which defendant pleaded guilty to second degree murder, nor could he specifically recall defendant. He testified, however, that it was his regular custom and habit to assure that either he or counsel completely reviewed the waiver of constitutional trial rights with a defendant who was entering a guilty plea, and that he would not have accepted such a plea if any of the answers obtained in questioning the defendant was not satisfactory.[1]

The prosecutor who represented the People at the 1977 change-of-plea proceedings specifically recalled defendant and those proceedings, and testified that defendant had been advised of and waived his *Boykin-Tahl* rights. The prosecutor could not recall with certainty whether the potential term of imprisonment was discussed,[2] or who had advised defendant of his rights. Although he had not seen defendant display any objective signs of intoxication, the prosecutor acknowledged that there was a drug problem at Vacaville during the time period in question. It was further established that the prosecutor's file in the prior murder case contained a notation that there was a "full voir dire by the Court and counsel" at the change-of-plea proceedings. The prosecutor testified he would not have made this notation had defendant not been questioned about recent drug ingestion.

Counsel who represented defendant at the change-of-plea proceedings testified he had some memory of the case but could not remember any particulars. He too testified it was his custom and habit either to have his client complete a written waiver form, or to go over each constitutional

---

[1] Evidence Code section 1105 provides: "Any otherwise admissible evidence of habit or custom is admissible to prove conduct on a specified occasion in conformity with the habit or custom." (Cf. *In re Tucker* (1966) 64 Cal.2d 15, 18 [48 Cal.Rptr. 697, 409 P.2d 921] [clerk's affidavit concerning custom and practice of deceased judge relevant and admissible to establish that defendant had been advised of his right to court-appointed counsel prior to entry of guilty plea]; *In re Luce* (1966) 64 Cal.2d 11, 13-14 [48 Cal.Rptr. 694, 409 P.2d 918] [trial judge's affidavit of his "universal practice" constituted admissible "persuasive evidence" that defendant was apprised of his right to court-appointed counsel]; see also *United States* v. *Freed* (9th Cir. 1983) 703 F.2d 394, 395, cert. den. 464 U.S. 839 [78 L.Ed.2d 126, 104 S.Ct. 131] [evidence of trial court's plea-taking practice and counsel's practice in advising clients upon entry of plea]; *United States* v. *Goodheim* (9th Cir. 1982) 686 F.2d 776, 777-778 [trial court's practice].)

[2] We note again that defendant entered a *stipulated* plea of guilty to second degree murder at the 1977 change-of-plea proceedings. He was already an incarcerated felon who was then pleading guilty to the murder of a fellow inmate. These factors, when considered in light of all the evidence produced at the evidentiary hearing, strongly support an inference that defendant was aware of the additional term of imprisonment he faced as a consequence of pleading guilty to murder.

right that his client was waiving by entry of a guilty plea prior to such proceedings. It was also his custom and habit to assess whether his client was under the influence of alcohol or drugs at the time of entering a plea, to advise his client of the future consequences of pleading guilty, and to voir dire him concerning the rights he was waiving by entering a guilty plea. Counsel testified he would not agree to the acceptance and entry of a guilty plea unless his client had specifically waived each of his constitutional trial rights (right to jury trial, confrontation, and privilege against self-incrimination).

Defendant testified in his own behalf at the hearing on the motion to strike the prior-murder special circumstance. He acknowledged having participated in the change-of-plea proceedings on July 1, 1977. At that time he understood he was to receive a six-year concurrent term, believing that would not affect him in the future. He claimed he took drugs every day while incarcerated at Vacaville and was under the influence of some substance all the time. He further claimed he was never advised of his constitutional trial rights and asserted he would not have pled guilty to second degree murder had he been so advised.

At the conclusion of the hearing, the trial court ruled that the People had met their initial burden of establishing the fact that defendant had suffered the 1977 conviction by producing a certified copy of the abstract of judgment for that conviction. The court reasoned that the burden thereafter "shifted" to defendant who, by his testimony, had made an adequate showing of constitutional infirmity so as to "shift the burden back" upon the People to rebut defendant's evidence and establish the constitutional validity of the prior conviction. The court concluded the People had met this alleged burden by "clear and convincing evidence," but indicated further it would not have made such a finding were the applicable standard "proof beyond a reasonable doubt."

Defendant petitioned the Court of Appeal for a writ of mandate. In denying the petition, that court reasoned as follows: (1) both the defendant and the People have a statutory right to have a prior-murder special-circumstance allegation "decided" by the same jury that sits as the trier of fact of defendant's guilt of the instant murder; (2) this statutory right encompasses the right to a jury trial on a collateral challenge to the *constitutional validity* of the underlying prior murder conviction; (3) as such, absent a waiver by both sides of their respective right to jury trial on the validity of the special circumstance allegation, the only pretrial procedure that will "protect[] the defendant from the consequences of an unwarranted special circumstance trial," "while preserving to the People their statutory right[s]," is one "equivalent [to] a Penal Code section 995 motion," and as

such the court must decide the pretrial challenge based on whether or not "reasonable cause" has been shown to bind the defendant over for trial on the special circumstance allegation. The Court of Appeal concluded: "We deem the motion made below to be the equivalent of a Penal Code section 995 motion. Because the court utilized a standard [(clear and convincing evidence)] much higher than 'reasonable cause' to bind the defendant over for trial on the special circumstance, a new hearing on this issue is unnecessary."

Both parties sought review in this court; we granted their respective petitions. The State Public Defender has filed an amicus curiae brief on behalf of defendant; the Criminal Justice Legal Foundation has filed an amicus curiae brief on behalf of the People.

## II

■ We must first determine whether the defendant's and the People's statutory right to a jury trial on *the truth of* a prior-murder special-circumstance allegation (§ 190.4, subd. (a)) also encompasses the right to a jury trial on a collateral challenge to the *constitutional validity* of the underlying prior conviction. We conclude that it does not.

Section 190.1, subdivision (a), commands that the trier of fact shall determine *the truth of* all charged special-circumstance allegations at the same time as adjudication of the question of defendant's guilt of the murder charge.[3] The statute creates an exception for prior-murder special circumstances.

Section 190.1, subdivision (b), provides that, in those instances where a prior-murder special circumstance is alleged, there shall be separate "further proceedings" to determine *the truth of* that special circumstance allegation.[4]

Section 190.4, subdivision (a), provides, in pertinent part: "Whenever special circumstances as enumerated in Section 190.2 are alleged and the

---

[3] The full text of section 190.1, subdivision (a), provides: "The question of the defendant's guilt shall be first determined. If the trier of fact finds the defendant guilty of first degree murder, it shall at the same time determine the *truth* of all special circumstances charged as enumerated in Section 190.2 except for a special circumstance charged pursuant to paragraph (2) of subdivision (a) of Section 190.2 where it is alleged that the defendant had been convicted in a prior proceeding of the offense of murder in the first or second degree." (Italics added.)

[4] The full text of section 190.1, subdivision (b), provides: "If the defendant is found guilty of first degree murder and one of the special circumstances is charged pursuant to paragraph (2) of subdivision (a) of Section 190.2 which charges that the defendant had been convicted in a prior proceeding of the offense of murder of the first or second degree, there shall thereupon be *further proceedings on the question of the truth of such special circumstance.*" (Italics added.)

trier of fact finds the defendant guilty of first degree murder, the trier of fact shall also make a special finding on *the truth of* each alleged special circumstance. The determination of *the truth of* any or all of the special circumstances shall be made by the trier of fact on the evidence presented at the trial or at the hearing held pursuant to Subdivision (b) of Section 190.1." (Italics added.)

In determining the meaning of these controlling statutory provisions, we are guided by well-settled principles. ■■ We look first to the language of the statute itself. (E.g., *People* v. *Craft* (1986) 41 Cal.3d 554, 559 [224 Cal.Rptr. 626, 715 P.2d 585]; *People* v. *Knowles* (1950) 35 Cal.2d 175, 182 [217 P.2d 1].) When the language is clear and there is accordingly no uncertainty as to the legislative intent, we look no further. (E.g., *People* v. *Weidert* (1985) 39 Cal.3d 836, 843 [218 Cal.Rptr. 57, 705 P.2d 380]; *People* v. *Belleci* (1979) 24 Cal.3d 879, 884 [157 Cal.Rptr. 503, 598 P.2d 473].) In such a case we do no more than enforce the statute according to the plain meaning of its terms. (*Leroy T.* v. *Workmen's Comp. Appeals Bd.* (1974) 12 Cal.3d 434, 438 [115 Cal.Rptr. 761, 525 P.2d 665]; accord *Caminetti* v. *United States* (1917) 242 U.S. 470, 485 [61 L.Ed. 442, 452, 37 S.Ct. 192].)

These rules of statutory construction are applicable whether the measure is enacted by the Legislature through the regular lawmaking process or, as with the provisions of our current death penalty statute, by the electorate through the initiative process. (See *In re Lance W.* (1985) 37 Cal.3d 873, 886-890 [210 Cal.Rptr. 631, 694 P.2d 744].)

■■ When the provisions of sections 190.1, subdivisions (a) and (b), and section 190.4, subdivision (a), are read as a whole, it is clear that the statutory scheme governing capital murder prosecutions grounded on the prior-murder special circumstance neither expressly, nor impliedly, requires that a collateral attack upon the *constitutional validity* of the underlying prior conviction be heard by the trier of fact.[5]

---

[5] By analogy, the general provisions of section 1025 state, in relevant part, that if a criminal defendant denies having suffered a prior conviction, "the question whether or not he has suffered such previous conviction must be tried by the jury which tries the issue upon a plea of not guilty . . . ." The clear import of this language is that *the fact or truth of* the prior conviction is a question for the jury. Were the intent behind section 1025, or the statutory special-circumstance provisions here at issue, that the jury adjudicate the *constitutional validity* of an alleged prior conviction, such intent could have easily been expressed in the statutory language.

Similarly, article I, section 28, subdivision (f), of the California Constitution now provides: "Any prior felony conviction of any person in any criminal proceeding, whether adult or juvenile, shall subsequently be used without limitation for purposes of impeachment or enhancement of sentence in any criminal proceeding. When a prior felony conviction is an

The meaning of the phrase "the truth of such special circumstance," as utilized in section 190.1, is plain and clear to us: The jury sitting as trier of fact must determine "the truth of" the prior conviction—i.e., the fact that defendant was previously convicted of first or second degree murder. This court has on past occasions utilized the phrase "the truth of [prior convictions]" in just this very context. (See, e.g., *In re Yurko* (1974) 10 Cal.3d 857, 863 [112 Cal.Rptr. 513, 519 P.2d 561]; *People* v. *Curtis* (1969) 70 Cal.2d 347, 360, fn. 10 [74 Cal.Rptr. 713, 450 P.2d 33].)

Section 190.4, subdivision (a), provides that, "[t]he determination of *the truth of* any or all of the special circumstances shall be made by the trier of fact on the evidence presented at the trial *or at the hearing held pursuant to Subdivision (b) of Section 190.1.*" (Italics added.) The phrase "hearing held pursuant to Subdivision (b) of Section 190.1" is an obvious reference to the bifurcated proceeding which follows a verdict of guilt when a prior murder special circumstance has been alleged. (§ 190.1, subd. (b).) Like the determination of "the truth of" all other special circumstances, a determination of "the truth of" a prior-murder special circumstance based on evidence presented at the bifurcated proceeding is *factual in nature*; the jury must find proof beyond a reasonable doubt of the *existence* of the prior conviction. Such a construction of sections 190.1, subdivision (b), and 190.4, subdivision (a), renders the meaning of the statutory language ("the truth of any or all of the special circumstances") consistent throughout all relevant provisions of the statutory scheme. (*People* v. *McCart* (1982) 32 Cal.3d 338, 344 [185 Cal.Rptr. 284, 649 P.2d 926]; *Stillwell* v. *State Bar* (1946) 29 Cal.2d 119, 123 [173 P.2d 313].)[6]

element of any felony offense, it shall be proven to the trier of fact in open court." To the extent article I, section 28, subdivision (f) might be read to command that a prior conviction underlying a prior-murder special-circumstance allegation "shall be proven to the trier of fact in open court," we would likewise construe that provision as requiring no more than that the *fact or truth* of the prior conviction be determined by the trier of fact.

[6] In further support of its erroneous conclusion that proof of the existence *and* constitutional validity of a prior murder conviction are both matters for determination by the jury, the Court of Appeal also relied on certain dictum in this court's opinion in *People* v. *Lo Cicero* (1969) 71 Cal.2d 1186 [80 Cal.Rptr. 913, 459 P.2d 241]. Such reliance was misplaced.

The defendant in *Lo Cicero* was convicted of furnishing and selling marijuana. The indictment did not allege any prior convictions although defendant, on cross-examination, admitted having suffered one, which admission in turn was invoked to declare him ineligible for probation. (71 Cal.2d at pp. 1187-1188.) This court held that the use of defendant's admission for that purpose was improper due to the existence of an express statutory requirement that the prior conviction be alleged in the indictment. (*Id.*, at p. 1192.) In so ruling, we stated: "The California Penal Code establishes a detailed procedure for the charging, trying, and finding of previous felony convictions. [Statutory citations omitted.] This procedure affords an accused advance notice that his prior conviction is in issue [statutory citations] and gives him the opportunity to contest the fact *and validity* of the prior conviction *to a jury* (§ 1025)

There are also practical policy considerations favoring *pretrial* adjudication of collateral attacks upon the constitutional validity of prior convictions. ■ As this court stated over 20 years ago: "A jury can no more be expected to disregard a 'true' prior conviction because of its unconstitutionality than it can be expected to disregard a confession because it was technically invalid. California policy clearly requires the question of the constitutionality of a prior conviction to be determined by the court and not by the jury." (*People* v. *Curtis, supra,* 70 Cal.2d at p. 360; see also *Jackson* v. *Denno* (1964) 378 U.S. 368 [12 L.Ed.2d 908, 84 S.Ct. 1774, 1 A.L.R.3d 1205].) And in *People* v. *Coffey, supra,* 67 Cal.2d at page 215, we observed: "It is clearly in the interest of efficient judicial administration that attacks upon the constitutional basis of prior convictions be disposed of at the earliest possible opportunity, and we are therefore of the view that, if the issue is properly raised at or prior to trial, it must be determined by the trial court."

■ As already shown, the statutory provisions which control here provide for bifurcated guilt and special circumstance phases when a prior-murder special circumstance is alleged, and they require that the existence of the prior conviction be determined by the trier of fact only *after* a verdict of guilt has been returned on the instant murder charge. As Justice Baxter observed in his separate concurring opinion below, "It would be extremely difficult for a jury to dispassionately adjudicate the constitutional validity of a defendant's prior murder conviction after having found him guilty of first degree murder and being made aware of the fact of the prior murder conviction."

We conclude that the Court of Appeal plainly erred in its determination that the statutory right to a jury trial on the truth or existence of a prior-murder special circumstance also encompasses the right to a jury trial on a collateral challenge to the constitutional validity of the underlying prior conviction.

---

which will be instructed that the prosecution must prove the former conviction beyond a reasonable doubt. [Citations omitted.] . . ." (*Lo Cicero, supra,* 71 Cal.2d at p. 1192, italics added.)

The *validity* of the prior conviction was clearly not at issue in *Lo Cicero.* Nothing in our opinion in that case indicates that Lo Cicero ever challenged the validity of the prior conviction, or requested a jury determination of the same; to the contrary, as noted, he admitted having suffered the prior conviction while under cross-examination. Our inclusion of the word "validity" in the above-quoted passage of *Lo Cicero* was patently unnecessary dictum to our holding in that case and, in any event, was written nearly 10 years prior to enactment of the applicable and controlling statutory provisions with which we are here concerned. We reject the implication in the Court of Appeal's opinion that the *Lo Cicero* dictum is controlling and dispositive in this case.

## III

 We have further determined, consistent with a long line of settled authority, that when a defendant seeks to collaterally attack the validity of a prior murder conviction alleged as a prior-murder special circumstance, the defendant has the burden of proof in establishing the constitutional invalidity of the prior conviction.

A collateral challenge to the constitutional validity of a prior conviction—i.e., a claim that, upon entry of a guilty plea to the prior murder charge, the defendant was not admonished and did not knowingly or effectively waive his constitutional *"Boykin-Tahl"* rights (*Boykin* v. *Alabama, supra*, 395 U.S. 238; *In re Tahl, supra*, 1 Cal.3d 122), or a claim that he was under the influence of some substance which rendered his waiver of rights and entry of the plea involuntary and constitutionally defective—presents legal questions of a far different nature than the factual determination of the existence of the prior conviction. Our Legislature has established certain threshold presumptions that apply to such collateral proceedings: the presumption "that official duty has been regularly performed" (Evid. Code, § 664); that a court whose judgment is under collateral attack "acted in the lawful exercise of its jurisdiction" (Evid. Code, § 666); and the provision that the "burden of producing evidence as to a particular fact is initially on the party with the burden of proof as to that fact." (Evid. Code, § 550, subd. (b).)

By operation of these presumptions, the prior murder conviction whose validity defendant has contested is presumptively valid, and he bore the burden of proving its *constitutional invalidity* below. In a long line of settled authority traceable to the United States Supreme Court's seminal opinion in *Johnson* v. *Zerbst* (1938) 304 U.S. 458 [82 L.Ed. 1461, 58 S.Ct. 1019, 146 A.L.R. 357], it has been recognized (often in the context of waiver of the right to counsel in pre-*Boykin* cases) that "[w]hen collaterally attacked, the judgment of a court carries with it a presumption of regularity," and that on collateral attack "the burden of proof rests upon [the defendant] to establish that he did not competently and intelligently waive his constitutional right[s] . . . ." (*Johnson* v. *Zerbst, supra*, 304 U.S. at pp. 468-469 [82 L.Ed. at p. 1469], fns. omitted; see, e.g., *Moore* v. *Michigan* (1957) 355 U.S. 155 [2 L.Ed.2d 167, 78 S.Ct. 191]; *Brown* v. *Allen* (1953) 344 U.S. 443, 458, fn. 6 [97 L.Ed. 469, 489, 73 S.Ct. 397]; *Darr* v. *Burford* (1950) 339 U.S. 200, 218 [94 L.Ed. 761, 774-775, 70 S.Ct. 587], overruled on other grounds in *Fay* v. *Noia* (1963) 372 U.S. 391, 435 [9 L.Ed.2d 837, 866-867, 83 S.Ct. 822]; *Hawk* v. *Olsen* (1945) 326 U.S. 271, 279 [90 L.Ed. 61, 67, 66 S.Ct. 116]; *Walker* v. *Johnston* (1941) 312 U.S. 275, 286 [85 L.Ed. 830, 835-836, 61 S.Ct. 574].) This court has likewise long followed the rule of *Johnson* v.

*Zerbst.* (See, e.g., *In re Berry* (1955) 43 Cal.2d 838, 846 [279 P.2d 18]; *In re Dixon* (1953) 41 Cal.2d 756, 760 [264 P.2d 513]; *In re Connor* (1940) 16 Cal.2d 701, 707 [108 P.2d 10] [quoting the *Johnson* v. *Zerbst* language on the burden of proof].)

■ As was stated by the high court in *Darr* v. *Burford, supra,* 339 U.S. 200, "A conviction after public trial in a state court by verdict or plea of guilty places the burden on the accused to allege and prove primary facts, not inferences, that show, *notwithstanding the strong presumption of constitutional regularity in state judicial proceedings,* that in his prosecution the state so departed from constitutional requirements as to justify a federal court's intervention to protect the rights of the accused." (*Id.,* at p. 218 [94 L.Ed. at pp. 774-775], fn. omitted, italics added.)[7]

Here, defendant testified that he was under the influence of drugs when he entered his guilty plea to the 1977 murder, and that he was not advised of his *Boykin-Tahl* rights at the time of that plea. In rebuttal, the People introduced substantial evidence at the evidentiary hearing below, as was their right. (*People* v. *Sumstine, supra,* 36 Cal.3d at p. 924, fn. 10.) All interested parties present at the prior change-of-plea proceedings testified at the hearing. That testimony amply supports the trial court's finding that defendant was fully admonished and knowingly waived each of his

[7]In a footnote in *People* v. *Coffey, supra,* 67 Cal.2d 204, it was stated that: "Though the burden of proof as to the constitutionality of the charged prior conviction remains with the prosecution, and the burden of producing evidence rests initially with it, the latter burden shifts to the defendant upon proof of the fact of his having 'suffered' the prior conviction. (See Evid. Code, § 550.)" (*Id.,* at p. 217, fn. 15.)

The *Coffey* footnote is misleading. For purposes of proceeding on the defendant's pretrial motion to strike the special circumstance allegation, the People need only make a prima facie showing of the existence of the prior conviction. The burden of establishing, beyond a reasonable doubt, that the defendant in fact *suffered* the prior conviction remains with the prosecution; the People must ultimately shoulder this burden at the bifurcated proceeding conducted after the guilt phase. (§ 190.4, subd. (a).) The burden of proving the *constitutional invalidity* of the prior conviction, however, lies with the defendant who is collaterally attacking the prior judgment. Indeed, in the passage of the main text of *Coffey* to which the above-noted footnote is appended, it was correctly observed that "when this prima facie showing [that defendant suffered the prior conviction] has been made [by the People], the defendant shall thereupon have the burden of producing evidence that his constitutional right to counsel was infringed in the prior proceeding at issue." (67 Cal.2d at p. 217.) Evidence Code section 550, cited in the *Coffey* footnote, provides, in relevant part, that, "The burden of producing evidence as to a particular fact *is on the party against whom a finding on that fact would be required in the absence of further evidence.*" (Italics added.) Here, in light of the presumptions of regularity discussed above, unless the defendant introduces evidence to the contrary he could not prevail on a claim that his prior conviction is constitutionally invalid.

The main text of *Coffey,* read together with Evidence Code section 550, is therefore consistent with the long-standing principle that the burden of proof in establishing the constitutional invalidity of a prior conviction rests with the defendant who is collaterally attacking its validity. To the extent the *Coffey* footnote suggests otherwise, it is in error.

*Boykin-Tahl* rights, and that he freely and voluntarily entered his guilty plea to second degree murder.

■ We conclude that the Court of Appeal erred in its determination that the People had the burden of proof to establish the "constitutional validity" of the prior murder conviction below. On a collateral challenge to the validity of a prior murder conviction via a motion to strike the prior-murder special-circumstance allegation, the defendant must bear the burden of proving the *constitutional invalidity* of his prior conviction in order to prevail on the motion.

## IV

The Court of Appeal construed the relevant statutory provisions as requiring that the People prove the "constitutional validity" of the prior murder conviction to the trier of fact "beyond a reasonable doubt." Thus far we have shown that this analysis was flawed in two respects: it is the defendant who bears the burden of establishing the constitutional invalidity of the prior conviction on collateral attack, and such a determination must be made by the court prior to trial and at the conclusion of an evidentiary hearing on the motion to strike the prior-murder special circumstance. ■ The Court of Appeal's further conclusion that the "beyond a reasonable doubt" standard of proof applied here was also error.

While section 190.4, subdivision (a), expressly provides that the People have the burden of proving "the truth of" the prior murder conviction by the heightened "beyond a reasonable doubt" standard of proof, the statutory scheme makes no express provision for the standard of proof to be applied to a pretrial determination of the *constitutional validity* of the prior conviction. In the absence of such express provision, Evidence Code section 115 controls. It provides, in relevant part: "Except as otherwise provided by law, the burden of proof requires proof by a preponderance of the evidence."

Analogous case law lends persuasive support to our conclusion that the "preponderance of the evidence" standard of proof embodied in Evidence Code section 115 is the applicable standard for establishing the invalidity of the prior murder conviction. Correctly construed, petitioner's pretrial motion to strike the prior-murder special-circumstance allegation required the trial court to determine preliminary factual questions relating to the validity of the prior murder conviction—i.e., whether defendant was under the influence of narcotics when he entered his guilty plea, and whether he was admonished per *Boykin-Tahl* and expressly waived his constitutional trial rights. The "preponderance of the evidence" standard of proof has been

applied by the high court, and by this court, to such closely related constitutional questions as the voluntariness of confessions (see *Lego* v. *Twomey* (1972) 404 U.S. 477 [30 L.Ed.2d 618, 92 S.Ct. 619]; *People* v. *Markham* (1989) 49 Cal.3d 63 [260 Cal.Rptr. 273, 775 P.2d 1042]) and the admissibility of evidence challenged on Fourth Amendment grounds. (See *Colorado* v. *Connelly* (1986) 479 U.S. 157 [93 L.Ed.2d 473, 107 S.Ct. 515].) Indeed, in *Johnson* v. *Zerbst, supra,* 304 U.S. 458, wherein the defendant, in a habeas corpus proceeding, was seeking to collaterally attack the validity of his prior conviction on grounds that he did not competently and intelligently waive his constitutional right to counsel, the high court expressly held that the burden of proof rested with the defendant to establish the same *by a preponderance of the evidence.* (*Id.,* pp. 468-469 [82 L.Ed. at pp. 1468-1469].)[8]

## V

 In conclusion, when a defendant seeks to collaterally attack the validity of a prior conviction underlying a prior-murder special circumstance, he must first allege facts sufficient to justify a hearing on his motion to strike the special circumstance—i.e., "allege actual denial of his constitutional rights." (*People* v. *Sumstine, supra*, 36 Cal.3d at p. 922.) The court shall thereupon conduct an evidentiary hearing in the manner set forth in *Coffey* and *Sumstine*. At the hearing the People initially have the burden of producing evidence of the prior murder conviction sufficient to make a prima facie showing that defendant in fact *suffered* the conviction; the

---

[8]Defendant and the State Public Defender as amicus curiae urge that to require that constitutional validity of a prior murder conviction be proved beyond a reasonable doubt would be consistent with the legislative intent behind the assertedly analogous provisions of Vehicle Code section 41403, relating to proof of prior convictions of driving while under the influence. That statute provides that where a defendant challenges the constitutionality of a prior driving-under-the-influence conviction alleged in a prosecution for new driving-under-the-influence charges, Vehicle Code section 41403 requires the trial court to hold a pretrial hearing outside the presence of the jury, at which the burden of proof remains with the prosecution through the hearing and is that of beyond a reasonable doubt. (See Veh. Code, § 41403, subd. (b)(1)-(4).)

The analogy to the provisions of Vehicle Code section 41403 is unavailing. Contrary to defendant's assertion, the prior driving-under-the-influence conviction charged in such a proceeding is not an "element" of the new violation, but rather an enhancement factor. (See Veh. Code, §§ 23103.5, 23165, 41403, subd. (b) [which subdivision provides for a separate bifurcated hearing outside the jury's presence to establish the validity of the prior conviction].) Likewise, the "constitutional validity" of the prior murder conviction herein concerned is not being charged by the People as an "element" of the prior-murder special circumstance, nor do we believe it could be so construed under the express statutory provisions of section 190.4, subdivision (a). Indeed, the very fact that the Legislature explicitly incorporated the "beyond a reasonable doubt" standard of proof into the bifurcated statutory scheme of Vehicle Code section 41403, reinforces our conclusion that provision for such a heightened standard of proof could have been, *but was not,* expressly incorporated by the drafters into the statutory scheme here in issue.

prosecution will ultimately bear the full burden of proving the existence of the prior conviction beyond a reasonable doubt at the bifurcated proceeding following the guilt phase. (§ 190.1, subd. (b).) Once this prima facie showing has been made, the defendant has the burden of producing evidence to establish the constitutional invalidity of the prior conviction, and the burden of proof on such issue shall remain with the defendant. The People have the further right to present evidence in rebuttal. (*People* v. *Sumstine, supra,* 36 Cal.3d at p. 923; *People* v. *Coffey, supra,* 67 Cal.2d at p. 217.) At the conclusion of the hearing, the trial court must determine whether the defendant has carried his burden of establishing the constitutional invalidity of the prior conviction by a preponderance of the evidence. (Evid. Code, § 115.)

The decision of the Court of Appeal denying the petition for writ of mandate is affirmed.

Lucas, C. J., Panelli, J., Kennard, J., and Arabian, J., concurred.

**MOSK, J.**—I concur in the judgment.

I agree with the majority's disposition upholding the Court of Appeal's refusal to grant defendant relief by writ of mandate: his motion attacking a prior-murder-conviction special-circumstance allegation under the 1978 death penalty law as resting on a conviction invalid on *Boykin-Tahl* grounds (*Boykin* v. *Alabama* (1969) 395 U.S. 238 [23 L.Ed.2d 274, 89 S.Ct. 1709]; *In re Tahl* (1969) 1 Cal.3d 122 [81 Cal.Rptr. 577, 460 P.2d 449]) was properly denied by the trial court.

I do not agree, however, with the majority's reasoning. My analysis is as follows.

First, both the People and the defendant have a right to a determination by a jury as to the truth of any special circumstance allegations. (Pen. Code, § 190.4, subd. (a).) On this point there is no dispute.

Second, the People bear the burden of proving the truth of any special circumstance allegations beyond a reasonable doubt. (See Pen. Code, § 190.4, subd. (a).) On this point too there is no dispute.

Third, the prior-murder-conviction special circumstance is defined in relevant part as follows: "The defendant was previously convicted of murder in the first degree or second degree." (Pen. Code, § 190.2, subd. (a)(2).)

The construction of this special circumstance is critical. It may be interpreted to require either a prior conviction *simpliciter* or a prior conviction *that is valid*.

Inasmuch as the crucial function of special circumstances under the 1978 death penalty law is to delimit eligibility for capital punishment—i.e., to furnish the " 'meaningful basis [required by the Eighth Amendment] for distinguishing the few cases in which [the death penalty] is imposed from the many cases in which it is not' " (*People* v. *Anderson* (1987) 43 Cal.3d 1104, 1147 [240 Cal.Rptr. 585, 742 P.2d 1306], quoting *Furman* v. *Georgia* (1972) 408 U.S. 238, 313 [33 L.Ed.2d 346, 392 92 S.Ct. 2726] (conc. opn. of White, J.))—the latter interpretation should be adopted and the former rejected: the prior-murder-conviction special circumstance requires a prior conviction *that is valid*.

The majority arrive at the opposite conclusion. Their reasoning, however, is fatally flawed. They state that under Penal Code section 190.1, "The jury sitting as trier of fact must determine [only] 'the truth of' the prior conviction—i.e., the fact that defendant was previously convicted of first or second degree murder." (Maj. opn., *ante*, at p. 1301.) Not so. Under that provision, the jury must determine the truth of the prior-murder-conviction *allegation*. Whether the underlying special circumstance includes only the *fact* of such conviction as an element or both *fact* and *validity* is the crucial question before the court. The majority do not resolve that question, but merely avoid it by ipse dixit.

From the foregoing it follows that to establish the truth of a prior-murder-conviction special circumstance, the People must prove *both* the fact *and* the validity of a prior murder conviction—and must do so beyond a reasonable doubt. The majority conclude that the burden of proving *invalidity* rests on the defendant and that the standard is preponderance of the evidence. That conclusion allows death eligibility to be predicated on a conviction that is as likely to be invalid as valid. Such a result is altogether untenable.

It also follows that both the People and the defendant have a right to a jury determination of the existence of the "fact" and "validity" elements. Therefore, the defendant may not effectively deprive the People of their right by means of a pretrial motion to strike the special circumstance allegation pursuant to *People* v. *Coffey* (1967) 67 Cal.2d 204 [60 Cal.Rptr. 457, 430 P.2d 15], and *People* v. *Sumstine* (1984) 36 Cal.3d 909 [206 Cal.Rptr. 707, 687 P.2d 904]. He may, of course, seek to set aside the allegation prior to trial by means of a motion pursuant to Penal Code section 995. Under that procedure, it is he who bears the burden of proof: to prevail, he must show that the allegation is not supported by "reasonable or probable cause" (see Pen. Code, § 995, subd. (a)).

In this case, defendant made what may be deemed a Penal Code section 995 motion to set aside the prior-murder-conviction special-circumstance

allegation. As noted, he claimed that the underlying conviction was invalid on *Boykin-Tahl* grounds. The trial court rejected the point—in my view, rightly. Its consequent denial of the motion was therefore proper: defendant simply failed to show that the allegation was not supported by "reasonable or probable cause." It follows that the Court of Appeal's refusal of relief by writ of mandate was correct.

For the foregoing reasons, although I do not join in the majority's analysis, I nevertheless join in their disposition.

**BROUSSARD, J.,** Concurring and Dissenting.—I concur in the majority's conclusion that the constitutional validity of a prior murder conviction may be collaterally attacked through a pretrial motion to strike the special circumstance. I do not agree, however, that a defendant must show by a preponderance of the evidence that the prior conviction was invalid. The prosecutor has this burden of proof and, further, must establish the constitutional validity of the prior conviction beyond a reasonable doubt.

## I.

In *Boykin* v. *Alabama* (1969) 395 U.S. 238 [23 L.Ed.2d 274, 89 S.Ct. 1709], the United States Supreme Court held that a criminal defendant must comprehend the constitutional rights that he or she waives when pleading guilty. If the defendant does not understand these rights, the waiver is not valid. In *In re Tahl* (1969) 1 Cal.3d 122 [81 Cal.Rptr. 577, 460 P.2d 449], we applied *Boykin* to require that the record expressly demonstrate that the defendant was made aware of his or her constitutional rights and waived them. In light of *Boykin* and *Tahl*, the presumption of regularity does not attach when the record does not establish that the defendant was advised of each of the constitutional rights that he or she was waiving. (*People* v. *Sumstine* (1984) 36 Cal.3d 909, 923 [206 Cal.Rptr. 707, 687 P.2d 904]; *In re Smiley* (1967) 66 Cal.2d 606, 617 [58 Cal.Rptr. 579, 427 P.2d 179].)

Defendant alleged that he was under the influence of drugs at the time the court took his guilty plea in a prior murder case. The record includes the court's statement that the plea was "free and voluntary, predicated on a factual basis, with an intelligent waiver of rights and with understanding of the nature of the charges and possible consequences." The record, however, does not set forth, in express terms, defendant's personal waiver of each of the individual constitutional rights, as required by *Boykin* (*supra*, 395 U.S. 238) and *Tahl* (*supra*, 1 Cal.3d 122). Accordingly, the presumption of regularity is not applicable here as the record does not establish the predicate facts.

In *People* v. *Sumstine, supra*, 36 Cal.3d 909, we held that a prior conviction could be collaterally attacked by alleging a *Boykin-Tahl* violation. The challenge, we further held, should be addressed by the court in conformance with the procedure set out in *People* v. *Coffey* (1967) 67 Cal.2d 204 [60 Cal.Rptr. 457, 430 P.2d 15].[1] *Coffey* requires that courts treat a defendant's allegation of constitutional invalidity as a pretrial motion to strike the prior conviction from the accusatory pleading which alleges the conviction.

In accordance with the procedure enunciated in *Coffey*, the majority hold that the jury's duty in determining the "truth" of a special circumstance is merely to determine the fact of the conviction rather than the fact and the constitutional validity of the conviction. (Maj. opn., *ante*, at pp. 1300-1301.) Indeed, several policy reasons support this conclusion, including the economic use of the court's time and the problem of prejudice affecting a jury which has heard evidence of an unconstitutional prior conviction. Further, to allow other defendants to invoke a pretrial hearing on the constitutional validity of prior convictions while denying this right to defendants in death penalty cases would be a distinction unsupported in logic or statute. Accordingly, I concur in part II of the majority opinion.

## II.

In *Coffey* we held that the state must establish a prima facie case that defendant had suffered a previous conviction; then, the defendant had "the burden *of producing evidence* that [these] constitutional right[s were] infringed in the prior proceeding . . . ." (*People* v. *Coffey, supra*, 67 Cal.2d 204, 217, italics added.) The use of the term of art, "burden of producing evidence," itself indicates that we intended to give the defendant only the obligation "to introduce evidence sufficient to avoid a ruling against him on the issue." (Evid. Code, § 110.) Yet, in case there should be any confusion about the burden that was assigned to defendant, we explained: "Though *the burden of proof as to the constitutionality of the charged prior conviction*

---

[1] "*First*, when a defendant, whether by motion to strike the prior conviction or convictions on constitutional grounds, or by denial of such prior conviction or convictions on constitutional grounds at the same time of entering his plea to the same, raises the issue for determination, the court shall, prior to trial, hold a hearing outside the presence of the jury in order to determine the constitutional validity of the charged prior or priors in issue. *Second*, in the course of such hearing the prosecutor shall first have the burden of producing evidence of the prior conviction sufficient to justify a finding that defendant 'has suffered such previous conviction.' (Pen. Code, § 1025.) *Third*, when this prima facie showing has been made, the defendant shall thereupon have the burden of producing evidence that his constitutional [rights were] infringed in the prior proceeding at issue. *Fourth*, if defendant bears this burden, the prosecution shall have the right to produce evidence in rebuttal. *Fifth*, the court shall make a finding on the basis of the evidence thus produced and shall strike from the accusatory pleading any prior conviction found to be constitutionally invalid." (*People* v. *Coffey, supra*, 67 Cal.2d 204, 217-218, fn. omitted, italics in original.)

*remains with the prosecution*, and the burden of producing evidence rests initially with it, the latter burden shifts to the defendant upon proof of the fact of his having 'suffered' the prior conviction." (*Coffey, supra,* 67 Cal.2d at p. 217, fn. 15, italics added.)

Our pronouncement in *Coffey* is entirely antithetical to the discussion of *Coffey* offered by the majority opinion. While reiterating the basic procedure set forth in *Coffey,* the majority opinion reallocates the burdens under that procedure with its assertion that "[t]he burden of proving the *constitutional invalidity* of the prior conviction . . . lies with the defendant." (Maj. opn., *ante,* at p. 1304, fn. 7, italics in original.) The majority have confused the burden of producing evidence (Evid. Code, § 110) with the burden of proof (Evid. Code, § 115). As a result, the majority's "explanation" of *Coffey* does not explain our holding in *Coffey,* it overrules *Coffey.*[2]

Stare decisis is "a fundamental jurisprudential policy that prior applicable precedent usually must be followed even though the case, if considered anew, might be decided differently . . . ." We have held that we should only reconsider precedent where we find "court-created error" or when "subsequent developments indicate an earlier decision was unsound . . . ." (*Moradi-Shalal* v. *Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287, 296-297 [250 Cal.Rptr. 116, 758 P.2d 58].) The majority opinion never acknowledges that the *Coffey* decision (*supra,* 67 Cal.2d 204) unequivocally placed upon the prosecution the burden of proof in a pretrial hearing on the constitutional validity of a prior conviction. Instead, the majority relegate our mandate in *Coffey* to a footnote (maj. opn., *ante,* at p. 1304, fn. 7) and instead rely almost entirely upon a line of United States Supreme Court decisions involving habeas corpus proceedings.[3]

The majority opinion treats defendant's motion as if it were a petition for writ of habeas corpus where, standing in the position of a plaintiff in a civil

---

[2] The majority's conclusion is also contrary to *Sumstine,* which also stated that a defendant bears only the burden of producing evidence: "The state at first need prove only the fact of the prior conviction, but once the defendant has produced evidence tending to show his constitutional rights were infringed, it will not be sufficient rebuttal for the state to simply invoke the regularity of the silent record." (*People* v. *Sumstine, supra,* 36 Cal.3d 909, 923.) Once evidence is produced "tending to show" constitutional invalidity, the state must offer "sufficient rebuttal."

[3] Contrary to the majority's assertion, the United States Supreme Court did not refer generally to "collateral attacks" in holding that a defendant has the burden of proving the constitutional invalidity of a prior conviction in a habeas corpus proceeding: "Where a defendant . . . seeks *release by the extraordinary remedy of habeas corpus,* the burden of proof rests upon him to establish that he did not competently and intelligently waive his constitutional right to assistance of counsel." (*Johnson* v. *Zerbst* (1938) 304 U.S. 458, 468-469 [82 L.Ed. 1461, 1468-1469, 58 S.Ct. 1019, 146 A.L.R. 357], italics added; compare maj. opn., *ante,* at p. 1303 ["on collateral attack 'the burden of proof rests upon [the defendant] to establish that he did not competently and intelligently waive his constitutional right[s]' "].)

action, defendant would have the burden of proof. In ignoring the distinction between defendant's motion and a habeas corpus proceeding, the majority take a position that we expressly rejected years ago. In *Sumstine*, we stated clearly that motions to strike allegations of prior convictions could not be treated as habeas corpus proceedings, and explained the rationale: "The reason for [the] distinction between the rules governing habeas corpus and the rules governing motions to strike can be seen by examining the effects of the two different procedures. When the issuance of a writ of habeas corpus vacates the underlying judgment of conviction, the judgment ceases to exist for all purposes. After the writ has issued, the state can seek in some circumstances to retry the defendant on the underlying charges . . . ; due diligence and timeliness are therefore properly required, because tardy petitions hinder the state's ability to effectively present its case anew.

"On the other hand, motions to strike do not vacate the underlying conviction: 'The striking of an allegation of a prior conviction from the complaint in a pending criminal proceeding is not the equivalent of a determination that the defendant did not, in fact, suffer the conviction . . . . [T]he defendant must continue to fulfill the conditions of the sentence imposed upon him as a result of the prior conviction unless he successfully moves to vacate or set aside the judgment in the original action . . . .' . . . The purpose of a motion to strike is to challenge only the present effect of the prior conviction. As the state is the party proposing to assert the effect of the prior conviction at the current trial, the state should also be prepared to face challenges to it." (*People* v. *Sumstine, supra,* 36 Cal.3d 920-921, citations omitted, fns. omitted.)

Thus, the majority's conclusion that the defendant, rather than the prosecution, bears the burden of proof when the validity of a prior conviction is put in issue on a motion to strike is clearly at odds with the *Coffey* decision (*supra,* 67 Cal.2d 204) and is not supported by the authority on which the majority rely. Accordingly, I cannot join in part III of the majority opinion.

## III.

Furthermore, under California law, not only does the prosecution, rather than the defendant, bear the burden of proof with regard to the validity of a charged prior conviction, but the prosecution is required to prove the validity of the prior conviction beyond a reasonable doubt.

In 1971, four years after the *Coffey* decision (*supra*, 67 Cal.2d 204), the Legislature enacted Vehicle Code section 41403.[4] In that statute, the Legislature adopted the procedure set out in *Coffey* for drivers challenging the constitutional validity of a prior drunk driving conviction. As in *Coffey*, that section requires that the prosecution produce evidence of the prior conviction, and thereafter requires that defendant produce evidence that the defendant's constitutional rights were infringed in connection with that prior conviction. The prosecution then has the opportunity to present evidence in rebuttal. The statute explicitly provides: *"The burden of proof remains with the prosecution throughout and is that of beyond a reasonable doubt."* (Veh. Code, § 41403, subd. (b)(1), italics added.)

Thus, under Vehicle Code section 41403, when the state alleges a prior conviction in the context of a recidivist drunk driving charge, the prosecution is required to prove the constitutional validity of the alleged prior beyond a reasonable doubt. Whether or not the Legislature believed it was simply reflecting the mandate of *Coffey, supra*, 67 Cal.2d 204, when it expressly applied the reasonable doubt standard in this context, it is clearly anomalous, and indeed irrational, for this court to now apply a less stringent standard of proof—and, indeed, to place the burden of proof on the defendant, rather than the prosecution—in a setting in which the state has charged a prior conviction in order to establish the death eligibility of a criminal defendant. Because section Vehicle Code 41403 reflects a clear indication that the Legislature has concluded that the constitutional validity of a prior conviction must be proven by the prosecution beyond a reasonable doubt, there is no justification for invoking the "preponderance of the evidence" standard by "default" pursuant to Evidence Code section 115.

Furthermore, not only is the beyond-a-reasonable-doubt standard called for by analogy to the provisions of Vehicle Code section 41403, but that standard is also the standard that has been applied by federal courts in comparable contexts. As the Fourth Circuit recently explained in *U.S.* v. *Gaylor* (4th Cir. 1987) 828 F.2d 253, 255: "In a prosecution brought pursuant to a recidivist statute, the existence of a constitutionally valid prior conviction is an essential jurisdictional element of the offense which the government must prove beyond a reasonable doubt." (See also *Brown* v. *United States* (4th Cir. 1973) 483 F.2d 116, 121-122; *United States* v. *Lufman* (7th Cir. 1972) 457 F.2d 165, 166, fn. 2.)

Accordingly, I cannot join in part IV of the majority opinion.

---

[4] Vehicle Code section 41403 was initially enacted as Vehicle Code section 23102.2 by Statutes 1971, chapter 1371, section 1, page 2694.

## IV.

I would reverse the Court of Appeal decision and direct the Court of Appeal to issue a writ of mandate in accordance with the views expressed above.

Petitioner's application for a rehearing was denied February 21, 1991. Baxter, J., did not participate therein. Broussard, J., was of the opinion that the application should be granted.